## James B. Hill *versus* Robert Hill.

*Duty of Defendant in Ejectment as to Disclaimer.—Plea of General Issue, effect of.—Ejectment, when the proper Remedy between Tenants in Common of permanent Fixtures.*

1. When a plaintiff in ejectment has filed a description of the premises sued for, it is the duty of the defendant, if he does not mean to take defence for the whole, to file with his plea, a description of that *part* of the premises for which he takes defence: if he pleads the general issue, and files no specification of the extent to which he means to defend, he must be understood as defending for the whole of the premises in the plaintiff's writ: and after the trial has been conducted, in this manner, he cannot, in a court of error, complain that judgment passed for more than was in controversy.

2. Where a boiler, engine, and stack, were erected on land of the plaintiff at the joint expense of himself and the defendant, under an agreement to use

the same as a common source of power without limitation as to time, the interests created thereby in the fixtures are in the nature of real estate: and if one of the tenants in common exclude the other from the use and possession of such fixtures, ejectment will lie to enforce the agreement.

ERROR to the District Court of *Allegheny county*.

This was an action of ejectment by Robert Hill against James B. Hill, for a lot of ground on Penn and Morris streets, in the city of Pittsburgh, 72 by 105 feet, on which a boiler, engines, and stack had been erected by the parties.

When the case was called for trial, the parties by their counsel agreed to submit the controversy to the court below, in a case stated, which presented the following material facts:—

On the 12th July 1852, James S. Negley, who was the equitable owner of certain lots on the corner of Penn and Morris streets, in the city of Pittsburgh, extending seventy-two feet in front on Penn street, and running back along Morris street one hundred and thirty feet to Mulberry alley, agreed with Robert Hill and James B. Hill, the present plaintiff and defendant, then doing business under the name of R. & J. B. Hill, to convey to them a portion of the said lots, beginning at the corner of Morris street and Mulberry alley, and extending along Morris street toward Penn street twenty-five feet, thence parallel with Mulberry alley seventy-two feet, thence to Mulberry alley twenty-five feet, and thence seventy-two feet along Mulberry alley to the place of beginning; and also conferred upon them certain rights and privileges upon that portion of the lots that remained in his possession.

Under this agreement, and subject to the provisions thereof, Negley and R. & J. B. Hill put up, on the premises of Negley, a boiler, engine, and stack, which they used as a common source of power.

On the 31st December 1853, by articles of agreement, James S. Negley sold one-fourth of the said boiler, engine, and stack to William Dawson.

In 1855 Negley became insolvent, and executed an assignment for the benefit of his creditors to Robert Robb, who sold Negley's entire interest in the said premises to Robert Hill, July 24th 1855. But previous to this assignment Negley had rented his premises, known as the "Empire Works," and erected on his portion of the lot, to Dawson, Newmyer & Co.

After Robert Hill's purchase of Negley's interest, he entered into an agreement of lease with Newmyer & Graff, the successors of Dawson, Newmyer & Co., by article dated August 8th 1856.

Early in the year 1856, the partnership between Robert Hill and James B. Hill was dissolved, and their property passed into the hands of Robert Robb, as receiver, appointed by the District Court of Allegheny county, who, by deed dated 7th July 1856,

conveyed to James B. Hill, the defendant, all the right and interest of the firm of R. & J. B. Hill in the premises, and arising from or out of the before-mentioned articles of agreement between James S. Negley and R. & J. B. Hill. On the 18th May 1855, by an article of agreement, J. B. Hill purchased from Dawson, Newmyer & Co. their interest in the boiler, engine, and stack before mentioned. In January 1859, the lease between Newmyer & Graff and Robert Hill having expired, the latter went into possession of the Empire Works, but on proposing to use the boiler, engine, and stack, was prevented and forbidden to use them by James B. Hill, the defendant, who claimed to be the sole owner as against Robert Hill of the said boiler, engine, and stack, and entitled to the exclusive possession thereof.

Whereupon Robert Hill, the plaintiff, sued out the present writ of ejectment.

The court below gave judgment for plaintiff for the premises described in the writ, subject to the right of the defendant to remain in joint possession and ownership with the plaintiff of the boiler, engine, and stack mentioned in the statement of the case, the defendant owning and possessing the undivided three-fourths of the said boiler, engine, and stack, and the plaintiff owning and possessing the remaining undivided one-fourth part thereof. And it is further considered and adjudged that the defendant have the right to hold, possess, and enjoy the further rights or easements in the premises described in the writ granted and conferred upon Robert & James B. Hill, by the articles of agreement dated 12th day of July 1852, recorded in Deed Book, vol. 3, page 1; and of which rights or easements the defendant has become possessed by virtue of the proceedings in chancery, at No. 787, July Term 1855, District Court, and that the plaintiff have and recover the costs of his action.

Which was assigned here for error by both parties.

The first writ of error taken was by the defendant below, for whom it was argued, by *A. W. Loomis*, that the court erred in entering judgment in favour of the plaintiff upon the case stated, and especially in entering such judgment as was entered. 1. The judgment was for the premises described in the writ, seventy-two by one hundred and five feet, except a joint possession of the boiler, engine, and stack. The objection to which, was the obvious objection that the court pronounced judgment in favour of the plaintiff for property shown, by the case stated, to have been in the possession of the plaintiff below, and not in that of the defendant below. The case stated shows that Robert Hill had, and James B. Hill had not, possession of the Empire Works; that James asserted no claim or title thereto, but only to the boiler, engine, and stack; that he neither prevented nor

[James B. Hill *v.* Robert Hill.]

forbade the use of these works to Robert Hill.   That as soon as James forbade the use of the boiler, engine, and stack, Robert sued out his writ of ejectment for the *whole* premises, and recovered judgment for the *whole*, although the Empire Works, constituting more than nine-tenth parts thereof, were in his own possession, and not claimed by the defendant in ejectment.   His suit should have been limited and restricted to the boiler, engine, and stack, there being neither possession nor claim of title by the defendant to any other portion of the premises, and he was not entitled to recover either the premises or his costs.

2. Nor was he entitled to recover at all.   The case shows that Robert & J. B. Hill derived title to one-half of the boiler, engine, and stack under the provisions of the article of July 20th 1852, that Negley sold one-fourth of said boiler, engine, and stack to William Dawson, and that Dawson and Newmyer granted, bargained, sold, and assigned one-half of engine, boiler, and stack to J. B. Hill, who had succeeded to the rights of Robert Hill under the conveyance of Robert Robb, receiver.   The exhibits attached to and made part of the case show that J. B. Hill had paid Newmyer & Graff $875, the appraised value of the boiler, engine, and stack.   Under these circumstances, J. B. Hill claimed that as against Robert Hill, he was the sole owner of boiler, engine, and stack, he having, and Robert Hill not having, paid for the same.   Again, the agreement of July 20th 1852 shows R. & J. B. Hill (to whose rights J. B. Hill has succeeded) agreed to pay for the use of the adjoining ground *occupied or which might be occupied* by the said engine, machinery, and fixtures to such engine.

It is claimed that this covenant gave to J. B. Hill a right to the use and possession of the ground occupied by the engine, &c., for compensation; that by the terms of article, this privilege was to remain for the benefit of himself, his heirs and assigns, and that Robert Hill could not legally or properly recover possession thereof in ejectment.

3. Again: it is denied that Robert Hill has shown any title to recover in ejectment for the boiler and engine.   It is further denied that the case stated shows such acts or conduct on the part of J. B. Hill as gave Robert a right to recover in ejectment.   Robert prepared to use the boiler, engine, and stack, and "was prevented, and forbidden to use them by James B. Hill, who claimed to be the sole owner, as against Robert."   Whatever else this fraternal wrangling may have amounted to, we deny that it gave him any right to recover in an action of ejectment.   It appears, from the case stated, that James B. forbade Robert to use the engine, boiler, &c., but it does not appear that he prevented his doing so in any other mode or manner, or did any act of prevention, or uttered any other language

[James B. Hill v. Robert Hill.]

than to prohibit and claim to be sole owner.  This we claim to be a wholly insufficient foundation for a recovery in ejectment.

*George Shiras*, Jr., for defendant in error, contended, 1. That by pleading the general issue the defendant below admitted himself in possession of all the land claimed in the writ: Dietrich *v.* Mateer, 10 S. & R. 153; Steinmetz *v.* Logan, 3 Watts 162; Ulsh *v.* Strode, 1 Harris 433; and that not having furnished the court or the plaintiff with a statement of the territory claimed by him, he is not injured by a judgment which carefully recognises his alleged rights.

2. That the claim of title relied on by the plaintiff in error, consisted, in part, of unrecorded bills of sale which could not affect Robert Hill, who was a purchaser without notice.  That by the terms of these bills of sale, the boiler, engines, and stack were treated as personal property, which the alleged purchaser might have removed during the term of Dawson & Newmyer; but that they clearly passed as incidents to the realty purchased by Robert Hill.  ·That even if they availed as against him to pass an estate in the land, there remained the objection that Dawson & Newmyer held but one-fourth of the boiler, engine, and stack, which portion had been sold by Nagley to Dawson— the remaining fourth resting, of course, in the purchaser of his estate.

3. The objection that ejectment was not the proper remedy, was met by citing the cases of McMahon *v.* McMahon, 1 Harris 383; Law *v.* Patteson, 1 W. & S. 184; and Doe *v.* Bird, 11 East.

The opinion of the court was delivered, January 5th 1863, by

WOODWARD, J.—When plaintiff in ejectment has filed a description of the premises he sues for, either in his *præcipe* or afterwards, it is the duty of the defendant, if he does not mean to take defence for the whole premises, to file with his plea a description of that part of the premises for which he takes defence. Such a special defence operates as a disclaimer of possession or claim to whatever land is outside of the boundaries designated by the defendant, narrows the issue to the real point of contest, and averts from the defendant a liability for costs which, otherwise, might attend a plaintiff's recovery of the undisputed part of the premises: Steinmetz *v.* Logan, 3 Watts 162; Ulsh *v.* Strode, 1 Harris 433.  But where a defendant pleads the general issue in ejectment, and files no specification of the extent to which he means to defend, he must be understood as defending for the whole premises described in the plaintiff's writ. Especially is this so where, as in this case, after issue thus formed, the parties go into a case stated, and submit all the facts

which either of them relies on without a word to indicate that the defence is not as broad as the suit, and that the defendant means to resist in behalf of all that the plaintiff means to claim. After a contest has been conducted in this manner, it is too late, in a court of error, to complain that judgment passed for more than was really in controversy.

Essentially, this was an action of ejectment by one tenant in common against his co-tenant to get into possession of a boiler, engine, and stack, which had been erected on premises of the plaintiff, but of which the defendant held and claimed the right to hold exclusive possession. It is said that ejectment will not lie for such fixtures. Perhaps not if they were mere fixtures, but we think these were more. They were erected under the agreement of 12th July 1852, whereby James S. Negley sold a part of his lot, at the corner of Penn and Morris streets, in the city of Pittsburgh, to Robert Hill and James B. Hill (the present parties plaintiff and defendant), and recognised their joint ownership with him of the " engine, boilers, machinery, and fixtures thereto," which had been erected with their joint funds on that part of the premises which Negley retained to himself. And there was also conveyed, to the said Hills, the right to enter the premises of the said Negley, for the purpose of running and repairing said engine and machinery. Several minor details were also regulated by that instrument for the joint use and enjoyment of the engine, stack, and machinery, as the common source of power for the neighbouring factories of the respective parties.

R. & J. B. Hill thus became tenants in common with Negley of the engine and machinery, and of the ground whereon they stood. Not that the title of the ground was so transferred that it would remain in the Hills after removal of the engine, &c., but that the right to occupy it for the purposes of the engine, &c., was vested in the Hills in common with Negley. They were substantial if not permanent erections. They were not leased for a term, but, in virtue of a joint erection, and of the agreement aforesaid, they were the common estate of Negley and the Hills. They were in the nature of real estate. The interest of the Hills was an incorporeal hereditament, a right issuing out of the corporeal hereditament held by Negley, but was, nevertheless, an estate in land. When, subsequently, both of these brothers claimed to have acquired all Negley's interest in the engine, stack, &c., and that became the subject of dispute between them, what but a dispute about land was it? If either of them had excluded the other from a common enjoyment of the right, ejectment would have been the remedy for the deforcement. Much more was it the remedy when their disputes about the possession involved not only such title as they acquired by the agreement

of 12th July 1852, but the original title of Negley also, which they claimed to have acquired subsequently.

To fix the state of the title, let us trace it briefly through the papers. How it stood under the agreement of 12th July 1852, has been sufficiently said above. The Hills got into Chancery, and Robert Robb became the receiver of the firm of R. & J. B. Hill. On the 7th July 1856, in pursuance of a prior sale authorized by the court, Robb made his deed to James B. Hill for all the estate of the firm of R. & J. B. Hill at the corner of Morris street and Mulberry alley, including all their right and interest in the aforesaid engine, boiler and apparatus connected therewith, which interest was described as one-half. Thus the estate and interest conveyed to the Hills by Negley in 1852, became James B. Hill's in severalty in 1856.

But Negley had not retained his interest. On the 31st December 1853, he sold to William Dawson all his estate, right and interest in the firm of Negley, Mohan & Co., and one-fourth of the aforesaid "engine, boilers, stack, and fixtures." In and by the same instrument he leased to Dawson for a term of five years, the factory called the "Empire works." In 1855, Dawson assigned all his interest under this paper to Dawson, Newmyer & Co., who, in the same year, sold and conveyed to James B. Hill, amongst other things, the engine, boiler, and stack, aforesaid. Though this paper took no notice of the fractional interest which the grantors held, it is apparent they had only a fourth under the conveyance of Negley, and could transfer no more to Hill. But, after this conveyance, J. B. Hill held three-fourths of the engine and fixtures, one-fourth whereof, being half of Negley's half, was manifestly a direct and vested interest in the soil, a corporeal hereditament.

Negley's other fourth passed under his assignment to Robb, who conveyed it, by deed of 24th July 1855, to Robert Hill, and, like the fourth vested in James B. Hill, this was a corporeal and not an incorporeal interest. It is manifest, therefore, that the property retained to himself, by Negley, when, in 1852, he made certain grants to the Hills, subsequently vested in Robert Hill, except a fourth of the engine, &c., which, granted by Negley to Dawson, passed over to and vested in James B. Hill. It is manifest, also, that what the brothers are now disputing about is not the original interest which they held in common with Negley, that is confessedly in James, but is the interest which Negley at first retained to himself, and which, by virtue of subsequent mesne conveyances, has been equally divided between the brothers.

According to the face of the papers, therefore, James stands clothed with title to three-fourths of the engine, boilers, and stack, and Robert with title to one-fourth. But as James was in exclusive possession, and Robert was forbidden to use the com

mon property, this action was the appropriate form of redress, and the judgment of the court rendered to each that which appears to be his due.

It is objected, however, on the part of the plaintiff, that the papers under which James claims, being unacknowledged and unrecorded, cannot affect a purchaser of the realty without notice, and such a purchaser Robert claims that he was. So far as concerns the moiety which James acquired from R. & J. B. Hill, Robert assuredly does not mean that he was without notice, for the title was conferred by a judicial sale to which he was a party on record.

So far as concerns the fourth that came through Dawson, it is material to observe that when Robert bought out Negley in 1855, Dawson, Newmyer & Co. were tenants in possession under Negley. Robert became their landlord, and was bound to take notice of their rights, as well as of the rights of James, who was also in possession of a fourth of the engine, &c., under Dawson, Newmyer & Co. The possession of James under the agreement of 18th May 1855, was a circumstance to put Robert upon inquiry which would have led him to the truth. He was not, therefore, a purchaser without notice.

The judgment is affirmed.